

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

August 26, 2022

**Via ECF**
The Honorable District Judge Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    Hernandez v. Sea Breeze Mechanical Corp., et al.
              21-CV-6992 (GRB)(ST)

Dear Judge Brown:

      Our office represents Vincente Hernandez ("Plaintiff" or "Hernandez") and we submit this motion jointly with counsel for Sea Breeze Mechanical Corp. and Timothy Beaumont (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation on July 20, 2022.

      The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**I.**      <u>The Monetary Terms of the Settlement Agreement are Fair and Reasonable</u>

      **a.**    **The Settlement Amount**

      The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the total amount of $30,000.00.

      **b. Plaintiff's Position**

      Plaintiff brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that, as a former employee of Sea Breeze Mechanical Corp., he was not paid proper overtime rates when required to work in excess of 40 hours per week.

Plaintiff claimed damages for the relevant statutory period from December 2015 (six years from the filing of the Complaint under the NYLL) through the end date of his employment in August 2019.

During the relevant statutory period, Plaintiff alleged that he was regularly required to work approximately six (6) days per week and up to seventy-three (73) hours per week. However, Plaintiff alleged that he was not properly compensated for his hours worked in excess of forty each workweek.

In advance of the mediation, Defendants provided payroll records covering the entire statutory period in question. Although Plaintiff acknowledged that many of the weeks showed that Plaintiff had received overtime compensation at time-and-a-half his regular rate of pay (which ranged from $32.00 to $35.00 per hour) when he worked in excess of forty hours each week. However, in the absence of time records, Plaintiff believed that he could establish that he worked more hours than were accounted for in the payroll records. Plaintiff believed that he regularly worked and could establish that he worked at least five (5) additional overtime hours per week for which he had not been compensated at all. Plaintiff also alleged that he was entitled to statutory penalties under NYLL § 195 for alleged wage statement and wage notice violations.

If Plaintiff were successful in establishing an average of five (5) unpaid hours of overtime per week, he could have recovered unpaid overtime wages in the range of $45,000.00 to $50,000.00. However, Plaintiff understood the risks of continued litigation and the risks of a lower recovery or non-recovery if he were unable to establish additional hours worked beyond what was reflected in Defendants' payroll records. As such, Plaintiff's preference was for early resolution and a guaranteed outcome through a carefully-negotiated settlement between the parties at mediation.

### c. Defendants' Position

Defendants deny the entirety of Plaintiff's claims. Defendants maintained a proper time keeping system, which captured all of Plaintiff's hours of work. Plaintiff was paid for all hours worked, including those hours worked in excess of forty (40) per workweek, at the proper rate of time and one-half. Notably, Defendants produced years of payroll records (even years outside the NYLL six year statute of limitations) which confirmed Plaintiff's proper payment. Importantly, these payroll records included routine payment of overtime hours, consistent with the number of hours alleged in the Complaint.

Plaintiff's claim for statutory penalties under NYLL § 195 for alleged wage statement and wage notice violations are also denied as Plaintiff was always aware of his wage rate, received proper wage statements and received timely payment of all monies owed. Of course, Plaintiff offered no evidence showing otherwise. Moreover, federal courts lack jurisdiction over such claims when Plaintiff fails (as he did here) to identify resulting injury in fact (and therefore lacks standing). See, Sevilla v. House of Salads One LLC, 2022 WL954740, *7 (E.D.N.Y. Mar. 30, 2022)(holding plaintiffs lacked standing to present NYLL 195 claims because "based on the record before the Court, it is not clear that [the failure to provide proper wage notice and wage statements] led to an 'injury' that can be recognized by a federal court.").

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $30,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a mediation session before a qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, bona fide disputes over the hours worked by Plaintiff and the pay received by Plaintiff but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

## II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

The parties in this matter have agreed to a general mutual release of all claims in this action. This was carefully negotiated during the mediation as the parties wish to resolve any and all claims that were or could have been asserted against each other. The parties believe that the releases provided for in the Agreement are fair and reasonable and part of the parties' compromise to reach a settlement and gives each party "peace of mind" that they will not be subject to any other additional litigation. Furthermore, Plaintiff is no longer employed by Defendants and has no ongoing professional relationship with Defendants such that it would affect his rights as an employee going forward. Defendants know that all potential claims against them have been resolved by the Agreement. Plaintiff also gets the benefit of knowing that the counterclaims herein will be dismissed and no counterclaims or future claims can be brought against him now or in the future. This was particularly important as Defendants asserted a counterclaim against Plaintiff in their Answer.

Since *Cheeks* was decided, courts in both districts of this Circuit have approved mutual general releases in a number of cases. *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("there is nothing inherently unfair about a release of claims in an FLSA settlement"); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) ("Under these circumstances, a general release of the kind proposed in this case makes sense, in order to bring closure to both sides, and the Court finds it to be fair and reasonable"); *Geskina v. Admore Air Conditioning Corp.*, 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017) ("A general release of the kind proposed in this case, with [a] former employee[ ] who ha[s] no ongoing relationship with the employer, makes sense in order to bring complete closure") (internal quotations omitted); *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *5

(S.D.N.Y. June 22, 2016) (approving agreement containing "mutual general releases, negotiated by competent counsel for both sides, releasing both plaintiffs and defendants from liability for most claims each might have against the other up to the date the Agreement [was] signed"); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure"). Like in the cases cited above, the parties here have agreed to a *mutual* general release. As such, the Agreement will provide closure to both parties and allow them to "'walk[] away from their relationship … without the potential for any further disputes.'" *Lola*, 2016 WL 922223, at *2 (quoting *Souza*, 2015 WL 7271747, at *5).

Furthermore, the Settlement Agreement does not contain any confidentiality or overbroad non-disparagement provision that would otherwise preclude the parties from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $30,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $19,283.00 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,076.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of attempted and actual service of the summons and Complaint on all Defendants: $374.00
- the cost of the Court-annexed mediation: $300.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($28,924.00), or $9,641.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $10,717.00.

> **Settlement Amount:** $30,000.00
> **Attorneys' Expenses:** $1,076.00
> **Net Settlement Amount:** $28,924.00 ($30,000.00 - $1,076.00)
> **Requested Attorneys' Fees:** $9,641.00 ($28,924.00 / 3)
> **Total payable to Attorneys:** $10,717.00 ($9,641.00 + $1,076.00)
> **Total payable to Plaintiff:** $19,283.00 ($30,000.00 - $10,717.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their client throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.[1]

### IV.    Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement as fair and reasonable. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.

---

[1] Defendants take no position with respect to the attorneys' fee or costs request.